State of Wisconsin, Plaintiff-Respondent,
v.
Jason M. Mulroy, Defendant-Appellant.
Nos. 03-1604-CR, 03-2126-CR
Court of Appeals of Wisconsin.
Opinion Filed: May 11, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶ 1 PER CURIAM.
Jason Mulroy appeals a judgment, entered upon his no contest pleas, convicting him of two counts of causing great bodily harm by intoxicated use of a vehicle, two counts of hit and run and one count of causing injury by intoxicated use of a vehicle, contrary to WIS. STAT. §§ 940.25(1)(a), 346.67(1)(a) and 346.63(2)(a)1.[1] Mulroy also appeals the order denying his motion for postconviction relief. Mulroy argues the trial court erroneously exercised its sentencing discretion and suggests that he should be considered for the earned release program. We reject these arguments and affirm the judgment and order.

BACKGROUND
¶ 2 An information charged Mulroy with two counts of causing great bodily harm by intoxicated use of a vehicle, two counts of causing great bodily harm while operating a motor vehicle with a prohibited blood alcohol concentration, two counts of causing injury by intoxicated use of a vehicle and two counts of hit and run. The charges arose from allegations that Mulroy, who was intoxicated, was drag racing and slammed into another car, seriously injuring its driver, Amy Manos, and her two young daughters, Samantha and Brittany. Mulroy ultimately pled no contest to two counts of causing great bodily harm by intoxicated use of a vehicle, two counts of hit and run and one misdemeanor count of causing injury by intoxicated use of a vehicle. On the felony convictions, the court imposed a total sentence of twenty-six years, consisting of fourteen years' initial confinement followed by twelve years' extended supervision. On the misdemeanor conviction, the court imposed a consecutive sentence of one year in prison. Mulroy's motion for postconviction relief was denied and this appeal follows.

DISCUSSION
¶ 3 Sentencing lies within the discretion of the circuit court. See State v. Echols, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). In reviewing a sentence, this court is limited to determining whether there was an erroneous exercise of discretion. See id. There is a strong public policy against interfering with the sentencing discretion of the circuit court, and sentences are afforded the presumption that the circuit court acted reasonably. See id. at 681-82.
¶ 4 If the record contains evidence that the circuit court properly exercised its discretion, we must affirm. See State v. Cooper, 117 Wis. 2d 30, 40, 344 N.W.2d 194 (Ct. App. 1983). Proper sentencing discretion is demonstrated if the record shows that the court "examined the facts and stated its reasons for the sentence imposed, `using a demonstrated rational process.'" State v. Spears, 147 Wis. 2d 429, 447, 433 N.W.2d 595 (Ct. App. 1988) (citation omitted). "To overturn a sentence, a defendant must show some unreasonable or unjustified basis for the sentence in the record." Cooper, 117 Wis. 2d at 40.
¶ 5 The three primary factors that a sentencing court must address are: (1) the gravity of the offense; (2) the character and rehabilitative needs of the offender; and (3) the need for protection of the public. See State v. Sarabia, 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). The weight to be given each of the primary factors is within the discretion of the sentencing court and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. See State v. Wickstrom, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). When a defendant argues that his or her sentence is unduly harsh or excessive, we will hold that the sentencing court erroneously exercised its discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).
¶ 6 Here, Mulroy argues that: (1) the court failed to explain why the maximum sentence was appropriate; (2) the sentence is unduly harsh; (3) the court overemphasized the punishment aspect; and (4) the sentence imposed was longer than sentences imposed by other trial courts for comparable crimes. We are not persuaded.
¶ 7 The court considered the three primary sentencing factors. With respect to the gravity of the offenses, and particularly the impact on the victims, the court concluded that Mulroy's offense was particularly egregious because it was not Mulroy's first drunk driving offense. The court compared Mulroy's behavior over the fourteen months leading to the accident as a game of "Russian roulette," indicating that Mulroy had continued the game until "eventually the barrel was pointed at two little girls." The court continued: "The chamber had been spun one more time. You engaged in a race, you had been drinking, and unlike every other time in the past when you squeezed the trigger [and] there was no bullet, ... this time the bullet found its mark."
¶ 8 The court explained how Mulroy's actions resulted in severe injuries to Brittany and Samantha, ages two and four, stating:
[T]hey can't respond to your request for forgiveness. They have no understanding of that. ... They don't recognize people. They don't recognize friends and relatives. They have no attachment anymore to those people. They can't find any fondness in eating food because they are taking it from a tube. They cannot delight in their own 4th birthday. And when you ask for forgiveness, they have no way to do that. See, because I don't think you understand that you do not have the insight of the damage that you caused these young people and the length of time.
The court additionally noted that the impact of Mulroy's crime on the family was "catastrophic," and that the children themselves had effectively been sentenced "to a life sentence."
¶ 9 Although Mulroy characterized his actions as a "terrible mistake," the court disagreed, saying that a mistake was an act of mere negligence. The court added that Mulroy's actions in the fourteen months prior to and during the accident were not a mistake but, rather, indicated a "complete disregard for the safety of other people." With respect to the actual accident, the court indicated that although any reasonable person would know people were injured in the collision, Mulroy showed his concern by fleeing the scene, hiding in the brush, and eventually running to a farm where he lied to the farm couple in an attempt to avoid the consequences of his actions.
¶ 10 Turning to Mulroy's character, the trial court considered that Mulroy was only twenty-three years old and came from a solid, close-knit family background. The court also noted that Mulroy was a very "sociable person, well liked by many people" and a good worker. The court indicated, however, that Mulroy was a person who did not learn from his mistakes. In considering Mulroy's prior record, the court noted that although Mulroy was aware of the penalties that existed as a result of violating the law, he continued to drink and drivespecifically citing a prior incident in which Mulroy was "caught ... going seventy miles an hour in a twenty-five mile an hour zone with over .20 blood alcohol content."
¶ 11 Finally, inherent in the court's rationale is an interest in protecting the public from Mulroy's "complete disregard for the safety of other people." The court nevertheless indicated that the sentence was "not necessarily even protection of the public," but "pure old-fashioned punishment and retribution."
¶ 12 To the extent Mulroy claims the trial court overemphasized the punishment aspect and failed to give adequate consideration to mitigating factors, the weight to be given each of the primary factors is within the discretion of the sentencing court and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. Wickstrom, 118 Wis. 2d at 355. Although the trial court primarily emphasized the gravity of the offense, including the impact on the victims, the court properly considered all three primary sentencing factors.
¶ 13 Mulroy nevertheless contends that the sentence was unduly harsh and the court failed to explain why the maximum sentence was appropriate or why the sentences were imposed consecutively. The trial court, however, considered the proper sentencing factors and imposed a sentence authorized by law. The court indicated it was imposing a severe sentence because Mulroy had committed three prior drunk driving related offenses and the "[p]unishment should reflect the severity of these crimes." Moreover, the trial court did not erroneously exercise its discretion by imposing consecutive sentences for crimes involving three different victims. See State v. Hamm, 146 Wis. 2d 130, 157, 430 N.W.2d 584 (Ct. App. 1988) (it is reasonable to make sentences consecutive if counts involved different victims).
¶ 14 Mulroy additionally challenges his sentence as substantially longer than similarly situated defendants.[2] However, "[t]here is no requirement that defendants convicted of committing similar crimes must receive equal or similar sentences." State v. Lechner, 217 Wis. 2d 392, 427, 576 N.W.2d 912 (1998). Rather, "[t]he sentencing court must assess the crime, the criminal, and the community and no two cases will present identical factors." Id. Here, the circuit court noted that Mulroy's case was unique and had to be decided on its own facts. Under the circumstances of this case, it cannot reasonably be argued that Mulroy's sentence is so excessive as to shock public sentiment. See Ocanas, 70 Wis. 2d at 185. We therefore conclude the circuit court properly exercised its sentencing discretion.[3]
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Mulroy cites State v. Ralph, 156 Wis. 2d 433, 456 N.W.2d 657 (Ct. App. 1990) for the proposition that inconsistency in sentencing justifies sentence modification. In Ralph, however, the trial court sought parity between the sentences of Ralph and a co-defendant. Ultimately, this court held that a co-defendant's unknown prior jail term was a "new factor" justifying sentence modification. Id. at 438-49. Here, the court properly considered the appropriate sentencing factors and sentenced Mulroy based on the facts of this case. We discern no error.
[3] To the extent Mulroy argues that this court should direct the circuit court to consider his eligibility for the earned release program, Mulroy has failed to develop or cite any legal authority for this argument. This court declines to consider arguments which are unexplained, undeveloped, or not supported by citation to authority. M.C.I., Inc. v. Elbin, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988). In any event, in his reply brief, Mulroy concedes he is statutorily ineligible for the earned release program and instead argues he should be considered for participation in the Challenge Incarceration Program. It is a well-established rule of appellate practice, however, that this court will not consider arguments raised for the first time in a reply brief. Northwest Wholesale Lumber v. Anderson, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995). Additionally, Mulroy's argument is again undeveloped and devoid of citation to authority.